## HARRISON v. CHARLTON.

1. **Continuance:** DISCRETION. The action of the trial court in passing on an application for a continuance is so much a matter of discretion that it will be disturbed only in a clear case of abuse.

2. **Damages:** MEASURE OF. The defendant purchased a lumber yard, with the stock on hand, to be invoiced and delivered at a future day. By the agreement of purchase plaintiff was to make no additions to the stock in the meantime; but in violation thereof he did make additions, which were, with the original stock, subsequently invoiced and delivered to the defendant and paid for by him without any knowledge that such additions had been made and included in the invoice. *Held,* in a cross-action by defendant, that the measure of his damages was the difference between the price paid by him for the additional lumber and the market price at which he could have purchased the same. DAY, J., dissenting.

3. **Practice:** ON APPEAL. In the absence of a showing by the record, the supreme court will presume that there was evidence adduced on the trial, to which instructions given were applicable.

4. —— That the instructions were erroneous, and are complained of by the appellant, does not change the rule.

*Appeal from Washington District Court.*

FRIDAY, SEPTEMBER 19.

PLAINTIFF brought his action against the defendant to recover a balance alleged to be due for lumber sold and delivered. Defendant answered denying the averments of the petition and pleading as a counter-claim that in July, 1871, he made a contract of purchase of plaintiff's lumber yard in Washington, Iowa, with the trade in the same, at which time it was agreed between them that the plaintiff was not to add any new lumber to the stock then in the yard; that in August following said purchase was completed and the lumber invoiced to the defendant; that at that time defendant did not know that any new lumber had been added by the plaintiff, whereas in truth and in fact plaintiff had fraudulently and in violation

of his agreement added a large amount of lumber of a lower and inferior grade and refuse lots at low figures, and denying at the time of the invoice that he had done so. The answer further alleges that by the terms of the contract he was to pay plaintiff for the lumber purchased at the Washington prices with 12 per cent off; that he paid the plaintiff a large sum of money for said lumber and trade, and that by reason of plaintiff having fraudulently added more lumber to the stock purchased of him by defendant, in violation of the agreement, and having deceived the defendant into receiving and paying therefor at the prices agreed upon, he has been damaged, etc. The cause was tried to a jury. Verdict and judgment for defendant. Plaintiff appeals.

*Patterson & Rhinehart* and *H. & W. Scofield* for the appellant.

*McJunkin & Henderson* and *Bennett & Russell* for the appellee.

MILLER, J. — I. At the term at which the cause was tried the plaintiff made an application for a continuance, which was overruled, and this ruling is assigned as error. In passing upon applications for continuances, so much is left to the discretion of the court below, that this court will not interfere unless it is made clearly to appear that such discretion has been abused. Upon an examination of the record before us, it does not appear that the district court abused its discretion in overruling plaintiff's application.

II. On the trial the court charged the jury as follows: "If you find the defendant entitled to recover damages on account of the fraud of plaintiff; that by such fraud he was deceived into taking more lumber than he otherwise would, the proper measure of damages will be the difference between what he paid plaintiff for such excess under the contract, and what he could have procured it to be placed in the yard for himself at the time sale and delivery was completed."

It is insisted that this instruction does not embody the true rule of damages in the case.

The well-settled general rule of damages for failing to deliver personal property at a specified time and place is the difference between the contract price and the market price at the time and place of delivery. *Cannon* v. *Folsom*, 2 Iowa, 101, and cases cited; *Boies & Barret* v. *Vincent*, 24 id. 387; *Jemison* v. *Gray*, 29 id. 537. The rule is one of compensation for what is supposed to be the real loss to the party injured. If the purchaser has not paid for the articles to be delivered, he can, with the money in his pocket, go into the market and supply himself with the same articles from another vendor; and if the market price has enhanced in the mean time, so that he is compelled to pay more, he is damaged to the amount of this excess and no more. Where the articles contracted for have been paid for in advance of the time for delivery, a different rule obtains. See cases before cited. The case before us is not for a failure to deliver, but for fraudulently inducing defendant to receive and pay for more lumber than he agreed to purchase of plaintiff. Does a different rule of damages apply? The price at which defendant agreed to take the lumber in the yard at the time of the contract was twelve per cent less than Washington prices, which we understand to be the retail prices of lumber in that city. At the time of making the contract and up to the time of receiving the lumber, defendant had paid no money thereon. If plaintiff had put in no more lumber than defendant had agreed to purchase, the latter could then, at the time of the delivery, have gone into the market and purchased any additional lumber at market prices, and if such market prices were less than the contract price at the time that defendant was deceived into receiving the additional lumber and paying for it, at the contract price, the defendant was injured just to the extent of this difference. So that it would seem the same rule of damages would apply as in case of a failure to deliver goods purchased, but not paid for before the time of delivery.

But it is insisted that this is not a claim for damages for the

*breach of a contract, but for fraud.* True, the injury to de-fendant consisted in deceiving him into receiving and paying for lumber at twelve per cent, less than *Washington prices,* but which, without the fraud, he might have purchased at the *market* price. The difference would, therefore, compensate him for the fraud committed. This claim on the part of the defendant is for a breach of contract, for a fraudulent breach it is true, but the rule of compensation is gen-erally applied in actions *ex contractu,* without regard to the motives which induce the violation of the agreement. To this general rule there are exceptions in breaches of contracts to convey real estate. *Ryder* v. *Thayer,* 3 La. Ann. 149; Sedgwick on Meas. Damages, marg. page, 207.

We think the instruction given by the court was calcu-lated to mislead the jury in not limiting the measure of damages to the difference between what the defendant paid for the excess of lumber over what was in the yard at the time of the contract, and what he could have procured it *at the market price,* to be placed there at the time of delivery. It is contended by appellee's counsel, that this is the real meaning of the instruction. We think that it is at least equally susceptible of being understood to allow a re-covery for the difference between the price paid by defend-ant and what, by reason of some peculiar advantages, which he possessed, and which were not common to others, he could have procured the lumber to be placed in the yard for, and which was or might have been much below the market price.

Again, it is urged on the part of appellee, that since the record contains none of the evidence on this subject, this court will not presume that the defendant recovered more than he was entitled to under the correct rule of damages as above stated. On the contrary, we will presume in the absence of a contrary showing, that there was evidence to which the instruc-tion was applicable, and it being erroneous, at least in that it was calculated to mislead the jury to plaintiff's prejudice, the judgment must be reversed and the cause remanded.

DAY, J., dissenting. — I cannot concur in the conclusions of the foregoing opinion. It applies to the fraudulent delivery to the vendee of personal property which is not purchased, the same measure of damages which applies to the failure to deliver property purchased.

To my mind there is no authority for such an application. The rule which is adopted in case of the failure to deliver is, as the majority opinion states, one of compensation for what is supposed to be the real loss. A party contracts for the purchase and delivery of property at less than the market price. The vendor refuses to deliver. The purchaser goes into the market and purchases at the market price, paying more than he contracted to pay. In an action against his vendor he recovers the difference between what he paid and what he agreed to pay, and thus he is, in the eye of the law, fully compensated, placed in the same position that he would have been in if his vendor had complied with his contract. If he made a good bargain he gets the full benefits of it.

In this case the defendant purchased the lumber in the yard, with the trade in the same. His purpose appears to have been to possess himself of plaintiff's business, and to that end he agrees to take the stock on hand at a price specified. It is, however, expressly understood that plaintiff shall add no more lumber to the yard. It may be that defendant has a contract under which he can fill up the yard at a price much less than he agrees to pay plaintiff, and because of this he exacts from plaintiff an agreement not to add any more lumber. The plaintiff fraudulently introduces a large quantity of lumber into the yard, and has it invoiced to defendant. The majority opinion holds that his measure of damage is not the difference between what he agreed to pay plaintiff, and what he could supply the yard for under his contract, but the difference between what he agreed to pay plaintiff and the market price at the time and place of delivery.

Thus a rule of damage which was intended to, and which does in the class of cases to which it is properly applicable, afford a party the full benefit of his contract is applied to this

case, in which it may have the effect of denying to the party those benefits. A bare statement of the facts of this case, it seems to me, shows the utter inapplicability to it of the measure of damages applied to the failure to deliver property sold. To my mind the court gave the proper measure of damage. It is the difference between what defendant paid plaintiff for the excess, and what he could himself have procured it to be placed in the yard for at the time the sale and delivery was completed.

If the evidence did not show that defendant could have procured it at less than the market price, of course the difference between the market price and what he agreed to pay would constitute his measure of damage. If it appeared from the evidence that he had a contract by which he could supply it for much less than the market price at the time of delivery, the rule given by the court allows him the benefits of that contract.

The error of the majority, it seems to me, is in applying to the case in hand a rule of damages intended for a class of cases to which it bears no analogy, and which, when applied to it, produces a result entirely variant from that which the rule was intended to accomplish.

For these reasons I do respectfully, yet most earnestly dissent.