PORTABLE ELEVATOR MANUFACTURING, COMPANY, Appellant, v. BRADLEY, MERRIAM & SMITH.

**Sales:** CONTRACT: BREACH.   Under a jobber's contract for the exclusive sale of machinery for a certain time and in certain territory, the machinery to be furnished as listed, and the jobber to use good business methods to effect sales, and in view of the evidence that both parties knew it was customary to take orders for future delivery, and that canvassing the territory was the proper method of procuring trade in that line of business, refusal to furnish machinery for which orders were taken during the life of the contract but to be delivered thereafter, was a breach of the contract.

**Same:** MEASURE OF DAMAGES.   Where it appeared that the expense of substituting other machinery for that sold, caused by defendants breach of the contract to furnish the same, was as great as that incurred in procuring the original orders, the plaintiff was entitled to recover as damages the profits that would have accrued from filling the original orders; and where the amount allowed was less than the proper measure of damages there was no prejudice to the defendant in awarding the expense of obtaining the orders.

*Appeal from Pottawattamie District Court.*—Hon. E. B. Woodruff, Judge.

Friday, December 13, 1912.

The parties agreed upon the amount owing on the account sued on, but from judgment awarding recovery on the counterclaim the plaintiff appeals.—*Affirmed.*

*Saunders & Stuart* and *Francis A. Brogan,* for appellant.

*Tinley & Mitchell,* for appellee.

Ladd, J.—The parties agreed that $1,735.34 was due plaintiff for goods furnished the defendant in pursuance of a contract. The controversy arises on the counterclaim in which defendant claims damages suffered in consequence of an alleged breach of said contract, in that plaintiff failed and refused to deliver to defendant certain machines and attachments for which orders were obtained prior to its expiration be delivered thereafter. This agreement was entered into November 21, 1907, and therein the plaintiff, as party of the first part, granted "unto the party of the second part (defendant) the sole and exclusive sale of their entire line of portable wagon dumps and elevators, conveyors, drages and horse powers" in certain defined territory "for a period of one year." Plaintiff undertook not to ship or sell such machines in said territory "during the existence of the contract, unless upon the written consent of the party of the second part," and that it would "make prompt and satisfactory shipments or delivery of all goods ordered by party of second part." The defendant agreed "to buy one hundred and fifty standard machines for the season of 1908, specifications to be furnished in sufficient time before Nov. 1, 1908, for their manufacture

and shipment.'' The fifth clause contains a guaranty, and the sixth stipulates that ''all of the 'little Giant grain dumps,' elevators, conveyors, and drages are to be furnished complete as called for in 1908 catalog and price list of said manufacturers as attached to this contract and marked 'Exhibition A.' Seventh. Party of the first part agrees to sell party of the second part all machinery at a discount of 35 per cent. from their price list of 1908.'' Following was a price list of attachments, after which the contract proceeds: ''All shipments made prior to October 1st, 1908, payable four months from October 1st, subject to a cash discount of one (1) per cent. per month for all anticipated payments, but not to exceed a total of three (3) per cent. cash discount. Shipments after October 1st to be four months from shipment, subject to a cash discount of one (1) per cent. per month for anticipated time, but not to exceed three (3) per cent. cash discount. The said party of the second part for and in consideration of the promises and undertakings of party of the first part, hereby covenants and agrees as follows: First. To fully canvass and work for the trade in the territory assigned by using all good business methods to promote the sale of the goods herein mentioned, and not to handle or offer for sale, other portable dumps and elevators, conveyors or drages; nor to sell outside of said territory except by consent of said party of the first part. Second. To make settlements promptly and in accordance with the terms hereinbefore mentioned.'' The remainder of the agreement relates to repairs and extras which were to be settled for December 1st of each year.

As the contract was not renewed or extended, the defendant prayed for allowance on the counterclaim for damages suffered in consequence of plaintiff's refusal to furnish articles to fill the orders taken prior to November 21, 1908, the time to which the right of exclusive sale was granted, but to be delivered thereafter. The evidence disclosed that plaintiff manufactured the various articles to be furnished under the contract, and that defendant was a jobber supplying local

dealers or retailers, and that prior to the expiration of the year during which the exclusive right of sale was granted defendant had taken forty-four orders for machines from local dealers within the stipulated territory. At their settlement in December following, plaintiff's attention was directed to these orders, but, having entered into a similar contract with another concern, it declined to furnish machines and attachments to defendant with which to perform its obligations assumed in accepting the orders.

But two matters are argued: (1) The construction of the contract; and (2) the measure of damages.

I. The language of the contract indicates that the implements were of a particular make or type, and were manufactured and supplied to jobbers as demanded.

1. SALES: contract: breach.
Such demand is measured by the call from jobbers, who, in turn, necessarily rely upon orders from retailers. The right to the "sole and exclusive sale" was limited to one year, or ended November 21, 1908. This had reference to the negotiation of sales by defendant with the local dealers. Were completed sales only contemplated or such executory sales as ordinarily are made by jobbers in the usual course of business in that particular line? This may be ascertained from the relations of the parties, the manner of transacting business between the jobber and retailer and especially by comparison with another portion of the contract. Plaintiff manufactured the implements enumerated and defendant was engaged in soliciting trade from and supplying retailers with these and other implements. This was done by taking orders from the retailers for future delivery, six to twelve and sometimes eighteen months hence, and especially was this true with respect to the articles manufactured by plaintiff, as the demand for their use was in the fall of the year. This method of doing business was understood by both parties. The other clause of the contract alluded to obligated defendant to "fully canvass and work for the

trade in the territory assigned by using all good business methods to promote the sale of the goods herein mentioned.'' How was this to be done? By soliciting the trade from retailers and procuring from them orders of goods, and this must have been so understood, for it appears to have been the only method of canvassing and working for trade in this line of business. Indeed, an officer of plaintiff in charge of its business with defendant testified that he ''understood that the proper handling of business of that kind required canvassing for future business.'' When was the canvassing and work for trade in the territory to cease? At the end of the year. Until that time, November 21, 1908, the defendant was not only bound to canvass and work for trade by the use of all good business methods, but prohibited from handling or offering for sale other articles of the kind. This, as said, involved soliciting business from the retailers and taking orders for future delivery according to the usage of the business being carried on up to the end of the year. Can it be that, though bound to solicit and enter into contracts with retailers for the sale of the implements in question up to the end of the year, this was to be done notwithstanding the impossibility of performing them within that time, and without assurance that they might be performed thereafter? And yet defendant must necessarily have been in this predicament were the construction contended for by plaintiff to be adopted. The time within which goods must have been ordered from or delivered by plaintiff is not restricted in the agreement, unless by the period defined for the ''sole and exclusive sale'' by defendant to the retailers, and this, as we think, in view of the duty of defendant to canvass for and take orders throughout the period, must be construed to have reference to the procurement of those executory contracts evidenced by accepted orders from retailers. Refusal then to furnish machinery and attachments to fill such orders was a breach of the contract on which damages were recoverable.

II. The implements were of a designated manufacture.

The defendant must have delivered these in order to perform its contracts with retailers. Though there may have been others of similar device, they were not such as had been contracted, and, though defendant was able to substitute some of another make in place of those ordered, the evidence that this involved as much expense and trouble as in procuring the original orders was undisputed. That the implements could not be supplied from the general market disposes of the authorities relied on by appellant. The defendant was handling these implements in order to acquire the profits to be obtained from supplying the local dealers, and, as by the breach of the agreement the defendant was deprived thereof, these constituted the damages which the latter was entitled to recover. *Hichhorn v. Bradley*, 117 Iowa, 130; *Rule v. McGregor*, 117 Iowa, 419; *Black v. Ry.*, 122 Iowa, 36; See *Iowa-Minnesota Land Co. v. Conner*, 136 Iowa, 674.

2. SAME: measure of damages.

As the amount allowed by the court was less than this measure authorized, there was no prejudice to appellant in awarding the expense of obtaining the orders only.—*Affirmed.*