Fiske-Marshall Manufacturing Company et al., Appellees, v. Rabus & Toeller, Appellants.

**CONTRACTS:** Rescission—Evidence. Evidence reviewed, and held
1 sufficient to justify the submission of the issue of rescission of a contract.

**TRIAL:** Instructions—Correct But Lacking in Details. Correct in-
2 structions relative to the right to rescind a contract are all-sufficient, in the absence of a request for more detailed instructions.

**TRIAL:** Instructions—Duty to Submit All Issues. The court must,
3 *without request,* instruct on every properly pleaded and supported issue.

**APPEAL AND ERROR:** Harmless Error—Nullifying Error. The sub-
4 mission of an improper element of damages is quite harmless when the complaining party concedes that the jury manifestly allowed nothing on such improper element.

*Appeal from Cedar Rapids Superior Court.*—Atherton B, Clark, Judge.

DECEMBER 15, 1922.

ACTION to recover on breach of contract the amount paid on the contract, and other damages, under rescission. Defendants counterclaimed for balance claimed to be due on the contract. The jury returned verdict in favor of the plaintiffs for the amount paid on the contract only, and against defendants on their counterclaim. Defendants appeal. Facts appear in the opinion.—*Reversed and remanded.*

*Redmond & Stewart,* for appellants.

*Barnes, Chamberlain, Hanzlik & Thompson,* for appellees.

ARTHUR, J.—Appellees held a patent for an office appliance, a copyholder, called the Adapto Line Guide, which they wished to manufacture, or have manufactured, and conferences were held between appellees and appellants respecting the making of dies and tools for the manufacture of the Adapto Line Guide, in pursuance of which appellants addressed to appellees, on November 13, 1919, a letter as follows:

"Yours of November 10th at hand, in reply will say. We can start on dies as soon as you place your order. Of course we will put our bid in writing and your order will be the acceptance. The dies can probably be finished in 6—8 weeks."

Afterwards, on the same day, appellants submitted to appellees a proposition in writing, as follows:

"We will build and test out all dies, punches, forms, stops and gauges to make the parts of your copyholder as per sample furnished, for the sum of $1,400. Terms: One third down with order. Balance when completed."

On December 16th, appellees accepted appellants' proposition, and made the initial payment on the contract of $466.67.

I. Appellees' claim was that appellants failed to perform their part of the contract within the time agreed upon; that, by reason of such failure, appellees elected to and did rescind their agreement with appellants, and demanded damages by reason of breach of the agreement, in the amount of $466.67, the amount

appellees had paid on the contract, and other damages for loss of profits.

Appellants denied appellees' right of rescission; denied that rescission had been effected; and averred that the goods mentioned in the contract had been manufactured since about June 1, 1920, and were ready for delivery to appellees, and that they tendered delivery of the manufactured articles to appellees at the time of the trial. In their counterclaim, appellants alleged that they had in every way completed their contract, and had the goods ready for delivery, as agreed, and demanded the balance due on the contract, in the amount of $933.33.

Both appellees' cause of action alleged in the petition and appellants' cause of action alleged in the counterclaim were submitted to the jury. From the judgment rendered on the verdict, this appeal is prosecuted. The right of recovery of appellees for alleged breach of contract and right of recovery of appellants on their counterclaim center on whether appellees had the right to rescind, under the facts shown in evidence, and whether they did rescind: that is, whether appellees may recover from appellants the $466.67 which they had paid on the contract, or whether appellants showed that they had finished manufacturing the articles mentioned in the contract and were ready to deliver them to the plaintiff in time contemplated by the contract, and, having tendered delivery, were entitled to recover the balance due under the terms of the contract of $933.33.

II. Oral testimony was introduced by both parties, bearing on the time in which the articles mentioned in the contract were to be furnished. All the talk concerning this matter seems to have been between Marshall, of appellees' firm, and Rabus, of the appellant firm, and to have occurred at times from late in October or early in November, 1919, to May, 1920. Marshall testified that there was talk between him and Rabus as to the length of time it would take to complete the order for making the dies, etc., and says that Rabus told him it would be from "6 to 8 weeks time. It might be delayed some little longer than that, which I agreed to, but not later than the 1st of March following our conversation,"—referring evidently to their early conversation in the fall of 1919. Marshall testified that, shortly after his firm made the initial payment, on December 16th, he

had a talk with Rabus with reference to the time that the contract would be completed, and had several talks with him afterwards on the same point, and that Rabus said that they were working on that right along, but that they would be out, he anticipated, at least by March 1st; that, when the order was first placed, he made special inquiry of Rabus, because he had a position in Chicago which he would have to quit, so as to come out and take care of this business, "if it would be any later than March 1st;" and that Rabus said he saw no reason why it should be, for the material for the making of the dies was there. This talk was had at Christmas time. Marshall testified: "I saw Mr. Rabus on an average of twice a week until I left Cedar Rapids in May." When asked why he went to see Rabus, he answered, "Trying to get some satisfaction as to when I could get delivery of these dies."

Rabus's testimony was that he first met Marshall early in November, when Marshall produced some of the parts of the Adapto Line Guide, and asked his firm to bid on the dies to manufacture same; that Marshall wanted him to limit or fix the time within which they could make the dies and punches with which to make the machine; that he told Marshall that it was impossible to fix the time limit, under the circumstances existing; that he told him of some of the difficulties that they were likely to encounter, such as procuring "tool steel" necessary for that particular kind of work, which was hard to get and slow in delivery, and that the "labor market was very much unsettled," and that they could hardly get help that was suitable for that work. Rabus said:

"There was no talk at any time, as I remember, between Mr. Marshall and myself that we could get his stuff out not later than the 1st of March."

Rabus testified that the work was completed at the end of May, 1920; that the last time he had seen Marshall was about the 1st of March, 1920. Rabus said that no time was fixed for fulfilling the contract; that he wrote the letter in which the clause appears "the dies can probably be finished in six or eight weeks," and by that he meant:

"If conditions did not get any worse, the dies could be finished in that time. I meant to convey to Mr. Marshall in

that letter that the dies could be furnished in probably six or eight weeks. That was only an opinion I gave him. I made no agreement giving the minimum or maximum in which we could complete the contract. I gave that letter to Mr. Marshall as a basis of price on which to accept the order."

We have not attempted to set out all the testimony of Marshall and Rabus, but the foregoing is the substance of their testimony bearing on the time within which the articles mentioned in the contract were to be finished. Appellees' right of recovery, based on nonperformance of the contract and right of rescission, largely depended upon whether there was an agreed time of performance, under the evidence. Also, appellants' right to recover on their counterclaim depended on the same proposition.

III. Appellants urge that it was error to submit the issue of rescission to the jury, as they claim that there was no pleading or evidence to sustain rescission, and that their motion made at the close of all the evidence, to direct a verdict on their counterclaim, should have been sustained. Such contention is without merit. Appellees alleged election to rescind on the ground of breach on the part of appellants, and demanded return of the initial payment made on the contract. In support of their right of rescission, appellees introduced in evidence correspondence between them and appellants. On September 20, 1920, appellees, through their attorneys, wrote appellants, calling attention to the contract in question, and to the fact that they "agreed to have the same completed within six or eight weeks," and that it was then "too late to use the dies," and that they would look to appellants for damages, as well as for the "money paid down on the contract." Appellants, answering appellees' letter of September 20th, among other things said:

1. CONTRACTS: rescission: evidence.

"We expressed the opinion it would require about 8—10 weeks after receiving the material, which was hard to procure. We received the last of this about March 1st. Good labor such as we require for die work could hardly be obtained. at any price. Thus the existing conditions were responsible to a drag in the work. The material he needs for his article could not be bought at that time, probably not now. The work is about com-

pleted, in fact we have many samples of the parts done."

Replying on October 9th, appellees wrote appellants that:

"Due to your negligence and tardiness in making the dies for Fiske-Marshall & Company, they cannot consider your proposition, and will be compelled to bring suit for money advanced and damages by reason of your delay and negligence."

Also, in this connection, in regard to rescission, appellants urge that there could be no rescission, and that there was no rescission effected, because appellees gave appellants no notice, prior to rescission, that they wanted them to perform the contract, and fixing a definite time within which they required performance of the contract. No instruction on the issue of rescission was requested by appellants, and, in the absence of request for instruction embodying their claims as to elements of the claimed rescission, we think that omission to instruct more completely and explicitly on the issue of rescission was not error.

2. TRIAL: instructions: correct but lacking in details.

IV. Appellants claim that error was committed in several instructions wherein they claim that the court assumed that there was a definite time agreed upon for the completion of the work mentioned in the contract, and that it was an issue in the case as to whether there was a definite time fixed or not. Upon an examination of the instructions assailed on that ground, we think that the instructions are not subject to such criticism. The court told the jury that it was incumbent on appellees to establish that appellants had failed to perform their part of the agreement within the time agreed upon, but left it to the jury to say what the agreement was, as shown by the evidence.

V. Appellants complain that the court erred in failing to instruct the jury on waiver and estoppel, pleaded by them. It is true that appellants pleaded that appellees had waived the right and were estopped to take advantage of rescission by a course of dealing after the alleged time of expiration for completion of the work, and by encouraging and permitting appellants to proceed at great expense to the completion of the work, without objection thereto. The court gave no instruction whatever on this issue. The issue made by appellants' plea of waiver and estoppel was a vital issue in the case, and if it had been stated and

3. TRIAL: instructions: duty to submit all issues.

presented to the jury in a proper instruction, might, perhaps, have been a decisive issue in the case. Appellants introduced evidence in support of their plea. Appellants did not request instruction on such issue; but, without request, the court was required to present this issue by proper instruction to the jury, and it was error to fail to do so, and such error was not waived by the omission of appellants to request an instruction thereon. *Wise v. Outtrim,* 139 Iowa 192.

VI. The court submitted to the jury the claim made by appellees, on which testimony was introduced, for damages based on loss of profit which they claimed would have been realized, had the articles mentioned in the contract been manufactured and furnished to them as provided in the contract. At the close of all the evidence, appellants moved to strike all the evidence as to prospective profits on sales of the Adapto Line Guide. This motion was overruled. Also, an instruction was asked by appellants to that effect, which was refused. Counsel for both parties indulge in long and interesting arguments on this claimed item of damages. However, we are relieved from considering it, and need only say that this question is conceded by counsel for both parties in their arguments, that the jury disposed of that issue clearly enough in its finding that appellees were entitled to recover $466.67, the exact amount of the initial payment on the contract. Counsel for appellants in argument say:

4. APPEAL AND ERROR: harmless error: nullifying error.

"The jury's verdict is clearly enough bottomed on the alleged rescission as it was submitted to them in the court's instructions."

We have not discussed each assignment of error separately, but have considered and substantially covered all of them in the foregoing discussion. Because of the error above pointed out, the case must be, and is, reversed and remanded.—*Reversed and remanded.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.