C. L. PERCIVAL COMPANY, Appellee, v. PAUL SEA, Appellant.

JANUARY 8, 1929.

*Franklin Jaqua*, for appellant.

*Neiman & Leake*, for appellee.

KINDIG, J.—On or about July 23, 1927, the plaintiff-appellee sold to the defendant-appellant a 10x8x10 Standard Cooler and a 2½x2½ Twin Arctic Ice Machine, for the consideration of $2,050. At the time of the purchase, appellant paid appellee the sum of $150 on the account. Afterwards, it appears, an additional $50 was received by appellee from appellant, but whether or not this was on said indebtedness, or for the purchase of a certain counter, is not plainly indicated in the abstract, arguments, and fact statements made by the parties.

This apparatus was desired for use in a meat market and restaurant, so that the standard form was not suitable, and it was necessary for appellee to make certain readjustments. These alterations included two doors, mirrors, and drain pans. The changes just described were included in the consideration above mentioned. Appellee built the ice box and machine, as ordered, and on August 11, 1927, notified the appellant that the same was ready for delivery. It appears that appellant was not ready to receive it. With this delay appellee became impatient, and on September 9, 1927, wrote appellant as follows:

"We are holding up your order here awaiting further disposition on same. Mr. Rix [appellee's representative] advises that you are looking for another meat man to take charge of your market, and we hope that you can secure one very soon. As you will remember, we built this cooler especially to your order, and we might put it in stock here and hold it for five years before anyone would want a cooler built like the one you ordered. Therefore, we expect you to go through with the deal, and take these goods and pay for them. We are willing to hold them a short time to help you get squared away."

Replying to that communication, appellant, under date of September 23, 1927, wrote appellee the succeeding letter:

"We are in receipt of your letter of September 9th and feel that under the circumstances we cannot go on with the deal. The man I held responsible for the job, went back on me and put me in debt $500 and it would be absolutely without reason to try to go ahead with the proposition. I feel it only right that you refund me the $50 I paid down on the counter, as this had nothing to do with the Refrigerator. Would certainly appreciate your check for same. This failure has put me in debt plenty and I know you will understand how I am situated and help me as much as you can."

Apparently in answer to the last mentioned message, appellee sent appellant this letter, on September 27, 1927:

"Please ship us the coils and drum of ammonia which were shipped to you at Gilmore City. Kindly do this at once."

Complying with that request, appellant shipped the property.

Recovery is sought by appellee on the theory that appellant broke his contract of purchase. Damages claimed are based upon two items: First, the loss of profits; and second, the cost of changing the ice box from special to standard equipment. Credit is allowed by appellee for the $200 which was paid. Such is the view taken of the case by the trial court, and the verdict directed included $712.50, allocated as follows: $512.50 for the lost profits, and $200 for restoring the cooler to a "stock article." Reduction was made by crediting the $200 already paid, thus leaving the remainder at $512.50.

Complaint is made by appellant, however, concerning the measure of damages. Due to alleged error at this point, a retrial is demanded. He urges that the rule applicable here is not what profits appellee lost, but rather, the difference, if any, between the market or other value of the property and the contract price. Furthermore, appellant also argues that there likewise should be a reversal: First, because of the dispute in the evidence concerning the cost of the alteration; and second,

because the question relating to whether or not there was a mutual rescission should have been submitted to the jury.

I. Consideration will first be directed to the question concerning the measure of damages. What is the criterion therefor? An answer to that interrogatory must depend upon the facts, because the rule must vary according to the circumstances of each case. *Howard v. Brown*, 168 Iowa 410; *Griffith v. Burden*, 35 Iowa 138. In the *Howard* case, we said:

"Whether that measure [the one discussed for the recovery of damages in that opinion] or some other is to be applied will depend, of course, upon the evidence as it may be produced upon the trial."

A study of the problem, as discussed in the various judicial pronouncements, texts, and encyclopedias, reveals the fundamental purpose of damages for breach by the buyer of a contract for the sale of personal property to be such as will fully indemnify or compensate the seller for the injury which he has sustained. 35 Cyc. 592, Subsection b; 24 Ruling Case Law 116, Section 386; *Omaha Beverage Co. v. Temp Brew Co.*, 185 Iowa 1189; *Harrison v. Charlton*, 37 Iowa 134. Apt language in the *Omaha Beverage Co.* case is: "The law contemplates full compensation for all damages ascertainable with reasonable certainty * * *." See 3 Elliott on Contracts, Section 2120 *et seq.*, and *Bremhorst v. Phillips Coal Co.*, 202 Iowa 1251. Moreover, Paragraph 2 of Section 9993, Code of 1927, provides:

"The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract."

Generally speaking, complete compensation is furnished by allowing the seller the difference between the market value of the product sold, at the time and place of delivery, and the contract price agreed by the defaulting buyer to be paid therefor. Forsooth, this is statutory. Paragraph 3 of Section 9993, Code of 1927, contains the following:

"Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances showing proximate damage of a greater amount, the difference between the contract price and the market or current

price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept.''

On the general proposition see 35 Cyc. 592, Subsection b; 24 Ruling Case Law 116, Section 386; *Harrison v. Charlton*, supra; *Ingram v. Wackernagel*, 83 Iowa 82; *Kimball Bros. v. Deere, Wells & Co.*, 108 Iowa 676; *Redhead Bros. v. Wyoming Cattle Inv. Co.*, 126 Iowa 410; *Art-Aseptible Furniture Co. v. Shannon*, 159 Iowa 225; *New England Syndicate v. Cutler*, 162 Iowa 246; *Hamilton v. Finnegan*, 117 Iowa 623. See, also, *Kinser v. McMurray*, 190 Iowa 1329.

When, however, the article sold has no market value, because specially made or adapted for the particular and peculiar uses of the buyer, the principle of law just stated varies, to meet the occasion. So, in such event, the compensation to be recovered by the seller from the buyer is the difference between the value, if any, of the article sold and the contract price. If it has no value, then the entire purchase price may be obtained by the seller. Without such right to remuneration, there would not be full compensation.

Throughout this discussion, it is assumed that the article sold has been produced or manufactured by the seller. Another rule would apply to a case where the commodity had not been manufactured at the time of the buyer's refusal to comply with the agreement. *St. Louis Range Co. v. Kline-Drummond Merc. Co.*, 120 Mo. App. 438 (96 S. W. 1040); 24 Ruling Case Law 117, Section 387. See *Kimball Bros. v. Deere, Wells & Co.*, supra; *Jonas v. Noel*, 98 Tenn. 440 (39 S. W. 724). See, also, Paragraph 4, Section 9993, Code of 1927.

Under some conditions, lost profits are recoverable in lieu of or in addition to other allowances. *Kimball Bros. v. Deere, Wells & Co.*, supra; *Howard v. Brown*, supra; *Portable Elevator Mfg. Co. v. Bradley, Merriam & Smith*, 158 Iowa 19; *Hichhorn, Mack & Co. v. Bradley*, 117 Iowa 130; *Iowa Brick Mfg. Co. v. Herrick*, 126 Iowa 721.

The above and foregoing legal principles must now be applied to the facts in this record. Appellee's witnesses testified that the remodeled cooler had no market value; that it was fitted especially for this specific purchaser, and would not be

suitable for any other. Consequently, the case must be disposed of on the theory that the property was not salable on the general market. But it did have a value. This is conceded by appellee. Remodeling, however, was necessary, and the expense of so doing must be deducted from the ordinary market value of the product. Claim is made by appellant for this particular cost in the sum of $200. Within the purview of the record, as made by appellee, the value of the property sold was $200 less than the standard stock article, which readily sells on the market. Resultantly, the measure of damage necessary here to fully compensate appellee would be the difference between the value (not market value) of the property and the contract price. Alterations, together with all other necessary expenses and losses, should be taken into consideration when fixing such value. Upon this basis, appellee would suffer no financial detriment, for its recovery would permit full compensation.

Error appears, then, in the municipal court's ruling. Profits, under the peculiar circumstances of the case at bar, do not furnish a correct standard for measuring appellee's damages. Its witnesses testified that those "profits" consisted of 25 per cent of the sale price. Included within the "profits" were the cost of sale and other expenditures; in other words, the testimony related to the gross, rather than the net, "profits." Clearly, these were all included in the contract price. Perhaps, when the correct rule is applied, appellee will recover more. Nevertheless, whether the compensation thus received is greater or less, just and full "compensation." is furnished for the loss of contract. No seller has the right to claim more. While evidence appears in the record concerning the contract price and the reconstruction cost, yet there is entirely lacking any proof concerning either the market or real value of the items sold.

Wherefore, there was no basis for any recovery, at the time the court directed a verdict in appellee's favor.

II. Complaint is also made by appellant because the municipal court directed a verdict to the effect that the rebuilding cost was $200. His idea is that there is a conflict of evidence regarding this, which should have been determined by the jury. At this juncture, appellant points out his own testimony to the effect that appellee's representative, when selling the merchandise, said

that the expense of alteration would be $50, and no more. Dispute arises also concerning the changes necessary in the refrigerator.

With this conflicting testimony in the record, there was presented a subject to be considered by the fact-finding body. That body, and not the court, was authorized to decide this particular controversy, under the circumstances.

III. Further objection is made by appellant because the trial court did not submit to the jury the question relating to a mutual rescission. Appellant asserts there was such rescission, while appellee contends there was not.

Important for consideration now are the letters quoted in the preliminary statement of facts. First in the order of those events was a communication from appellee, to the effect that the goods were ready for delivery. Next was appellee's written notification that the goods were manufactured, and that the loss would be great in the case of non-acceptance, because of the special rebuilding of the product. Then followed appellant's letter, suggesting:

"We cannot go on with the deal * * * . I feel it only right that you refund me the $50 paid down on the counter as this had nothing to do with the refrigerator."

Reply was made by appellee in these words:

"Please ship us the coils and drum of ammonia which were shipped to you at Gilmore City. Kindly do this at once."

Compliance with this request was made by appellant.

Did that amount to a mutual rescission? Was there the necessary meeting of minds? We think there was presented a jury question as to what was the intention of the parties. *Fiske-Marshall Mfg. Co. v. Rabus & Toeller*, 194 Iowa 1193.

Clearly, appellant is entitled to a new trial. Accordingly, the judgment of the municipal court is reversed.—*Reversed*.

ALBERT, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.