## No. 16,276.

### B. J. SHELTON COMPANY v. THEO. MUCKLE ENGINEERING COMPANY ET AL.

(218 P. [2d] 1057)

Decided April 3, 1950.   Rehearing denied May 22, 1950.

Mr. LOUIS G. ISAACSON, for plaintiff in error.

Mr. RALPH A. COLE, Mr. JOHN T. MALEY, for defendants in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

The parties to this action appear here in the same relative positions as in the trial court, and we will hereinafter refer to them as plaintiff and defendants.

In its complaint plaintiff alleged the corporate capacity of the defendant company; that it had assumed all the assets and liabilities of the individual defendants, who were conducting a partnership business at the time of the transaction which is the subject matter of this controversy; and it further alleged:

"That heretofore on or about January 17, 1947, the defendants did order from plaintiff one thousand motors with cord attached, to be manufactured by plaintiff at an agreed price of $2.45 per motor plus cord.

"That plaintiff, pursuant to said order, has manufactured, especially for defendants, the said motors, and has offered and does herein renew its offer to deliver said motors to defendants, but that defendants have failed and refused to pay for the same or to accept delivery thereof.

"That defendants are indebted to plaintiff in the amount of $2450.00."

On motion of defendants, a bill of particulars was ordered by the trial court to be filed, and plaintiff, in compliance therewith, identified the correspondence between the parties which formed the basis of the contract upon which this suit was brought. Nothing contained in said bill of particulars altered the nature of the action.

Defendants filed their answer denying all allegations contained in the complaint, except the corporate capacity of the parties, and setting up affirmative defenses. They also filed counterclaims for damages for breach of warranty, and for failure of plaintiff to deliver motors alleged to have been ordered by them. It

is unnecessary to consider further the defenses or counterclaims pleaded by defendants since no evidence was offered in support thereof.

The trial was to a jury, and at the conclusion of plaintiff's evidence defendants' attorney moved for dismissal of the action upon two grounds, as follows: "First, there has been no contract established upon which plaintiff can base a case. And, secondly, that this is an action for the price, and the [plaintiff] failed to establish the essentials of that particular requirement of the Uniform Sales Act."

In ruling upon the motion for dismissal, the trial court said: "The motion for dismissal in reference to the ground that no contract has been established will be denied. The Court is still of the opinion there was no—that the plaintiff's evidence fails to show all the necessary elements for a suit for the recovery of the purchase price, namely the sixth element Mr. Isaacson referred to. So the Court will grant the motion for dismissal." Thereupon counsel for defendants moved for dismissal, without prejudice, of defendants' counterclaims. This motion was granted.

Section 63 (3) of the Uniform Sales Act, chapter 228, Session Laws of Colorado, 1941, page 848, provides: "Although the property in the goods has not passed, if they cannot readily be resold for a reasonable price, and if the provisions of Section 64 (4) are not applicable, the seller may offer to deliver the goods to the buyer, and, if the buyer refuses to receive them, *may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer.* Thereafter the seller may treat the goods as the buyer's and may maintain an action for the price." (Italics supplied.)

The trial court, in mentioning the "sixth element," referred to the notification to the buyer by the seller, that the goods were held by the latter "as bailee for the buyer," and treated the action as a suit to collect the purchase price, upon a contract to sell goods under

which the seller agreed to transfer the property in the goods to the buyer at the agreed price of $2.45 per motor. The trial court further held that the provisions of the Uniform Sales Act, above quoted, were controlling, and that since there was no evidence that the seller had notified the buyer that the goods were being held as bailee for him, no action for the contract price could be maintained. Plaintiff specifies error on this ruling of the trial court.

Plaintiff's evidence was, in substance, that only five hundred of the motors had actually been manufactured. Counsel for plaintiff made an offer of proof relating to damages allegedly sustained by his client in connection with the five hundred motors not completed, upon the alleged breach of contract by the defendants. The offered evidence would have established, with reference to said five hundred motors, that plaintiff would have made a profit of $1.00 per motor for the five hundred motors which were not in fact manufactured. It was contended, "that, the evidence of cost, less salvage, plus the expected profits, is a provable element of damage as to the latter five hundred motors." Defendants' attorney objected to the offer upon the ground that such evidence was immaterial in an action for the recovery of the purchase price of goods sold; that plaintiff's action was such an action; that plaintiff had made an election and could not change its cause of action to one for damages for a breach of contract. The offer of proof was denied, and plaintiff specifies error thereon.

No request was made by plaintiff to amend its complaint. It contends that there was a sufficient notification to defendant buyer that the goods purchased were being held by the seller as bailee, and its counsel further contends that under the provisions of section 64, chapter 228, Session Laws of Colorado, 1941, page 849, it was entitled to such damages as it might be able to establish, resulting from the neglect or refusal of defendants to accept and pay for said motors. Plaintiff asserts

that, having proved a breach of contract, it was entitled to remain in court regardless of what should be found to be the "proper measure of damages." Said section 64, supra, provides as follows:

"(1) Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for non-acceptance.

"(2) The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract.

"(3) Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept.

"(4) If, while labor or expense of material amount are necessary on the part of the seller to enable him to fulfill his obligations under the contract to sell or the sale, the buyer repudiates the contract or the sale, or notifies the seller to proceed no further therewith, the buyer shall be liable to the seller for no greater damages than the seller would have suffered if he did nothing towards carrying out the contract or the sale after receiving notice of the buyer's repudiation or countermand. The profit the seller would have made if the contract or the sale had been fully performed shall be considered in estimating such damages."

## Questions to be Determined.

First: *Was the trial court correct in holding that plaintiff's action was one to enforce payment of the price of merchandise under the terms of a contract for the sale of personal property within the meaning of section 63 (3), chapter 228, Session Laws of Colorado, 1941?*

The question is answered in the affirmative. In the law of contracts there has been developed, even before the Uniform Sales Act, many distinctions in the rules applicable to sales of personalty which were not applicable to other contracts. Professor Williston in his work, Williston on Sales, second edition, section 560c, page 1398, discusses the transition from cases relating to sales to the adoption, in most states, of the Uniform Sales Act. Among other things he states, in section 562, page 1400: "The enactment of the Sales Act in many States has extended the seller's right in jurisdictions theretofore following the English law [which denied recovery of the price unless the property had passed] and limited his right in those which took the opposite view."

The Uniform Sales Act was adopted in Colorado in 1941, and, since it became effective, sales of personal property, and contracts to sell such property, are governed by its provisions. All rules formerly applied to such cases are without force or effect if they conflict with the terms of the act. The statute deals generally with the substantive law of sales. If it applies to the contract upon which plaintiff herein relies, then the rights and liabilities of the parties, and the remedies available to them, must be resolved by the application of its provisions.

It is clear from the wording of the complaint that plaintiff sought to recover the purchase price of one thousand motors. It is significant that it alleged that, "defendants are *indebted* to plaintiff in the amount of $2450.00." There is nothing whatever in the complaint to indicate that plaintiff sought to recover damages, as distinguished from the contract price.

Since the Uniform Sales Act provides specific remedies which are available to a seller, each of which is separate and distinct from the others, a plaintiff must, by his complaint, identify the particular transaction or occurrence which forms the basis of his right to relief.

It is clear from the complaint in the present case that the transaction or occurrence thus identified was the alleged failure of the defendants to pay the purchase price of the motors which plaintiff alleged he had manufactured pursuant to a contract with defendants. The trial court correctly held that plaintiff's case was governed by the sections of the statute dealing with an "Action for the Price."

�—ⅠⅠ Second: *Did plaintiff's evidence make a prima facie case showing compliance with the statutory conditions precedent to the right to maintain an action for the price of goods sold?*

This question is answered in the negative. As we have hereinbefore stated, the trial court ruled that there was no evidence tending to establish that the seller had notified the buyer that the goods would be "thereafter held by the seller as bailee for the buyer." It cannot be doubted that such notification is a condition precedent, under the facts here present, to the right to recover the price. Counsel for plaintiff points out only one letter written to defendants which he contends was a sufficient compliance with the requirement of notification of bailment. The pertinent statement in said letter is as follows: "These motors are complete, ready to go forward upon receipt of your shipping instructions." This statement amounts to no more than an "offer to deliver the goods to the buyer," which is another condition precedent to the right of action. It falls far short of giving the notice which is required, after refusal to accept delivery, that the seller will thereafter hold the goods as bailee for the buyer. We agree that the word "bailee" or "bailment" is not necessarily essential to a sufficient notification. *Illustrated Postal Card & Novelty Co. v. Holt*, 85 Conn. 140, 81 Atl. 1061. However, the substance of the requirement must be expressed by the use of words which will clearly indicate the purpose of creating the relation of bailee. Such a purpose cannot be inferred by giving to the

words here used their usual and generally accepted meaning.

In *G. Robison & Co. Inc., v. Kram,* 187 N.Y.S. 628, the court discussed the necessity of establishing the conditions precedent to the right to maintain an action for the price under the Uniform Sales Act, and among other things stated:

"Two facts essential to authorize an action for the purchase price under said subdivision 3 are not shown. They are that the goods cannot readily be resold for a reasonable price, and that the seller has notified the buyer that he holds the goods as bailee for him."

\* \* \*

"Since the statute was intended to change the common law, I am of opinion that it is important that pleaders should be required to abandon the common-law form of pleading in such cases and follow the statute; and where, as here, recovery for the purchase price of undelivered goods is sought, the facts showing that under the statute title has passed to the buyer should be alleged."

In the case at bar the plaintiff neither alleged nor proved notification that it would hold the goods as bailee for the buyer.

Third: *Did the trial court err in rejecting the evidence offered by plaintiff relating to the damage claimed to have been sustained because of the alleged breach of the contract by defendants?*

This question also is answered in the negative. In substance, counsel for plaintiff argues that it proved a contract, and a breach thereof by defendants; that under the Rules of Civil Procedure there is no such thing as a theory of a cause of action; and that plaintiff was entitled to any relief justified by any evidence relevant to any claim growing out of the contract and the alleged breach thereof by the defendants. The answer to this argument is that essential matters of substantive law are not affected by the Rules of Civil Procedure.

By its complaint plaintiff elected to rely upon the failure of defendants to accept delivery and to pay the purchase price of goods as the occurrence or transaction upon which its right to relief was based. As we already have stated, plaintiff's evidence failed to make a prima facie case supporting the substantive cause of action alleged in the complaint. Since timely objection was made to evidence of another and different occurrence or transaction warranting different relief, not alleged or sought in the complaint, the court did not err in rejecting the offered testimony.

██ The elasticity of the Rules of Civil Procedure relating to matters of procedure, cannot operate to destroy the distinct and separate character of substantive rights and remedies specifically provided by statute.

The judgment is affirmed.

MR. JUSTICE HAYS, MR. JUSTICE ALTER and MR. JUSTICE HOLLAND dissent.

*On Petition for Rehearing.*

MR. JUSTICE HOLLAND dissenting.

A consideration of the complaint herein and the evidence admitted in support thereof, clearly reveals a prima facie case of breach of contract. A right to relief is clearly shown, and the net result of the majority opinion is, that because plaintiff stated that defendants were indebted to it in the amount of $2,450 and prayed for a judgment in that amount, it was an irrevocable election to sue for the purchase price. Only one cause of action existed, which was for breach of contract.

The pertinent parts of the complaint are as follows: "4. That heretofore on or about January 17, 1947, the defendants did order from plaintiff one thousand motors with cord attached, to be manufactured by plaintiff at an agreed price of $2.45 per motor plus cord. 5. That plaintiff, pursuant to said order, has manufactured, especially for defendants, the said motors, and has of-

fered and does herein renew its offer to deliver said motors to defendants, but that defendants have failed and refused to pay for the same or to accept delivery thereof. 6. That defendants are indebted to plaintiff in the amount of $2,450.00."

It is not disputed that plaintiff, upon order, completed 500 of the motors and had partially completed the remaining 500, but they were not assembled. Plaintiff notified defendants that the 500 motors were ready, awaiting shipping instructions from the defendants. That the defendants failed to pay for the motors or accept delivery thereof is undisputed. It also is undisputed that the motors, as manufactured, were of a type specially designed for defendants' use and had no market value for resale.

Primarily, because plaintiff fixed the figure of the amount due from the defendants at what appears to be exactly the contract price, it was held by the trial court that plaintiff had elected to sue for the purchase price and had not complied with one particular of the Uniform Sales Act, to wit: that plaintiff, after offer to deliver the goods to the defendants, and defendants' refusal to receive them, had not notified the defendants that the goods were thereafter held by the seller as "bailee" for the buyer, and dismissed plaintiff's complaint. Plaintiff did not amend the complaint nor offer to do so, as it now says, there was no amendment it could make.

As now determined by the majority opinion, plaintiff after stating a cause of action, and showing the right to relief, is precluded from recovery on a technicality in the pleadings. Such is only a pretense of justice. If a litigant and counsel, in a just cause, can be so bewildered by the inconsistencies of procedure under the peculiarities of the wording of the so-called Uniform Sales Act (for which I have another name) and the rules of this court, as to endanger recovery of such an amount as is justly due, and allow the debtor to escape,

it is a sad commentary on our laws of procedure. I find no mandatory provision in the Uniform Sales Act calling for the result here obtained. The act provides that the seller "may" offer to deliver the goods, and "may" notify the buyer that the goods are thereafter held by the seller as bailee for the buyer. If the seller was tied down by the use of the mandatory word "shall," we might find an excuse for the judgment in this case. Time has not permitted me full research on this question; however, I find that one state, Massachusetts, did not accept the Uniform Sales Act as so written, but in the sections involved here did substitute the word "shall" for "may." This is significant.

In my opinion, the correspondence between plaintiff and defendants, held by the trial court to be a contract, discloses sufficient compliance with the troublesome section of the act, if plaintiff is to be held to have proceeded under that section of the act in an "action for the price." Plaintiff clearly stated a cause of action under section 64, "Action for Damages for Nonacceptance of Goods," but because it happened to use figures that were the exact amount of the contract price, it is now held to be fatal. Under all rules of reformed procedure, plaintiff was entitled to recover, not on its theory of damages, nor on the exact figure claimed, but properly and justly on the facts in the record showing a basis of recovery. If these facts disclose he was entitled to no relief, then it is to be denied, and recovery should properly be available without amendment, if not thought necessary, to the pleadings. *Nestor v. Western Union Telegraph Co.,* 25 F. Supp. 478.

Due to the fact, as here shown, that the goods as specially manufactured to be adapted to defendants' peculiar use, had no market value, then plaintiff was entitled to consider that the amount it could recover would be an amount equal to the purchase price. It is permitted under the Act to recover the profit it would have made if the contract or the sale had been

fully performed. This surely includes all costs of processing the order as well as the profit to be made thereon. As is said in *Percival Co. v. Sea*, 207 Ia. 245 (222 N.W. 886), "If it has no value, then the entire purchase price may be obtained by the seller. Without such right to remuneration, there would not be full compensation."

Now to the question of election. Plaintiff could not be held to an irrevocable election unless it was pursuing one of two inconsistent remedies. To establish the indebtedness, and a right to relief, the same facts were here necessary to support both remedies. The state of facts relied upon by plaintiff as to a breach of contract and liability on the part of the defendants is consistent with either action, that of one for the purchase price or for damages, and the same facts are not repugnant to the establishment of liability or recovery under the other companion section of the Act. I do not find that the procedural remedies provided are inconsistent because fundamentally the assertion of one mode of redress does not negate or repudiate the other. The facts as to the existence of defendants' liability are obvious under both sections of the Act.

It is to be noted that plaintiff did not allege reliance on any particular section of any statute, therefore if the trial court determined that plaintiff had no cause of action and could not recover under section 63 of the Act, it was not justified in dismissing a complaint in which were employed the almost identical wording of section 64. In other words, the complaint stated a claim for damage. Let it fall where it may, under any law, the plaintiff was entitled to remain in court. The effect of the majority opinion is, and I am fearful does establish a precedent, that a request in the prayer of a complaint can be held to be an irrevocable election by the pleader. An amendment would have been nothing more than an amendment to the prayer. Under our rules of civil procedure, and many of our statutes, a pleader is stalked by the shadow of an irrevocable election.

I am confident that after reading the above and foregoing it can be determined that I dissent to the majority opinion and I think a rehearing should be granted.

MR. JUSTICE HAYS and MR. JUSTICE ALTER join in this dissent.