[Civ. No. 21783.    First Dist., Div. Two.    July 31, 1964.]

WALNUT CREEK PIPE DISTRIBUTORS, INC., Plaintiff and Respondent, v. GATES RUBBER COMPANY SALES DIVISION, INC., Defendant and Appellant.

Heller, Ehrman, White & McAuliffe and Lawrence C. Baker for Defendant and Appellant.

David N. Bortin for Plaintiff and Respondent.

TAYLOR, J.—Defendant, Gates Rubber Company Sales Division, Inc., a Wyoming corporation, hereafter referred to as appellant or Gates, appeals from a portion of a judgment in favor of the plaintiff, Walnut Creek Pipe Distributors, Inc., hereafter referred to as respondent or Pipe Distributors. This action, originally brought by Pipe Distributors, a California corporation in the business of selling sprinklers, garden hose and plastic pipe to retailers and commercial customers, and its employee, William C. Brumfield, alleged several causes of action arising out of the appellant's cancellation of contracts designating Pipe Distributors as the wholesaler-jobber-distributor for various products manufactured and sold by Gates.

This appeal is restricted to the portion of the judgment[1] holding that the plastic pipe jobber-distributor contract between the parties contained an implied covenant obligating Gates to repurchase or give credit for $1,570.49, the purchase price of the unused stock of certain of Gates' products that respondent had on hand at the time of the cancellation. Gates argues that this portion of the judgment must be reversed because: (1) the court erroneously admitted certain evidence; (2) evidence concerning custom of the trade cannot be

---

[1]The remaining portions of the judgment, not in issue, relate to Brumfield's claim for $900 and Pipe Distributors' claim for $1,271.28 for defective merchandise delivered by Gates which were granted; Pipe Distributors' claim for the garden hose futures which was denied; and Gates' counterclaim for $1,485.29 on an open book account between the parties which was granted.

relied upon for such a covenant; (3) no such covenant of repurchase can properly be implied; and (4) the trial court erred in its finding that the covenant was enforceable as the respondent had failed to meet the requirements for an action under section 1783, subdivision (3), of the Civil Code.

In May 1957, Gates entered into a written. jobber-distributor contract for plastic pipe and sprinkler parts with respondent, then a sole proprietorship owned by Raymond Bates. This agreement provided automatic extension from year to year after the end of the calendar year 1957 unless either party elected to terminate by not less than 30 days' written notice to the other. In August 1958, William Brumfield, who had been a salesman for Gates for many years, left to join Bates as an equal partner in Pipe Distributors. Thereafter, the Pipe Distributors partnership and Gates entered into several similar standard form wholesaler-jobber agreements for garden hose and other Gates products. In October 1959, Pipe Distributors was incorporated and succeeded to all of the rights and obligations of the former partnership. Gates had notice of the incorporation and thereafter the parties treated all of the above agreements as continuing in effect between them.

In September 1959, appellant and respondent began to correspond about the failure of certain plastic pipes that Gates had sold to the respondent and which had been resold to certain customers. About the same time, because of a strike, respondent purchased a large amount of plastic pipe from the appellant. Thereafter respondent purchased only plastic pipe fittings and other products from Gates.

On November 28, 1960, Gates informed Pipe Distributors that it was exercising its right to terminate the agreements relating to the garden hose and light duty belts. By January 1961, the respondent's plastic pipe contract had also been cancelled.[2]

The trial court found that there was an implied covenant by Gates in the plastic pipe contract to repurchase or give credit for merchandise previously purchased by respondent which had not been disposed of before the contract was terminated; that on cancellation, Gates had breached this implied covenant and was indebted to Pipe Distributors for $1,570.49,

[2]How or when this came about is not made precisely clear by the record. However, the trial court's finding concerning the cancellation is not challenged by either party.

the value of certain merchandise that Pipe Distributors had on hand on the date of cancellation. The court gave Pipe Distributors credit for this amount in computing the net recovery to respondent in the amount of $1,356.48.

### I EVIDENCE PROPERLY ADMITTED

We turn first to the appellant's contentions concerning the introduction of evidence. Appellant argues that the trial court erroneously admitted extraneous evidence to explain the transaction between the parties. The uncontroverted evidence established that Brumfield, as a former employee, was thoroughly familiar with Gates' practices (*Nadell & Co.* v. *Grasso,* 175 Cal.App.2d 420 [346 P.2d 505]), that he dealt informally and orally with appellant's representative Lowry and that many important aspects of the contract, credit approval and arrangements were omitted from the printed document. Lowry testified that the price sheet was also an integral part of the contract. ■ Thus, the court below was faced with construing the obligations of the parties in a typical commercial transaction where, in addition to the formal written agreements between the parties, there were many oral and unexpressed agreements. We think the evidence was properly admitted under the well-established rules that a contract may be explained by reference to the circumstances under which it was made (Civ. Code, § 1647; Code Civ. Proc., § 1860).

As to the appellant's contention relating to evidence concerning the custom of the trade, the record indicates that no such evidence was ever introduced. However, to guide possible further proceedings, we think that if offered, such evidence would be proper to aid the court in its interpretation of the many nebulous and unexpressed arrangements between the parties (Code Civ. Proc., § 1870; *Rottman* v. *Hevener,* 54 Cal.App. 485, 490 [202 P. 334]).

### II NO IMPLIED COVENANT TO REPURCHASE

The respondent here argues that the covenant to repurchase was properly implied as the agreement between the parties was "a contract of adhesion." ■ The term refers to a standardized contract prepared entirely by one party, and which, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a "take it or leave it" basis without opportunity for bargaining and under such con-

ditions that the second party or "adherer" cannot obtain the desired product or service save by acquiescing in the form of the agreement. (*Steven* v. *Fidelity & Casualty Co.*, 58 Cal.2d 862, 882 [27 Cal.Rptr. 172, 377 P.2d 284].)

■ There was no finding by the court that the contract was one of "adhesion," nor would the facts justify such a finding. There is no evidence that the parties in the instant case were not bargaining as equals, nor can inequality be inferred, as respondent suggests, from the mere fact that their agreement was a jobber-distributor contract. There was no indication that the plastic pipe and other products were available only from Gates. Rather, the record indicates that other similar products were available and that in fact, after the fall of 1959, respondent acquired its plastic pipe from other manufacturers. There was no evidence that the respondent was unable to otherwise dispose of the merchandise in question.

■ Respondent points to the unfairness of the situation to justify the finding of an implied covenant of repurchase. The courts cannot make better agreements for parties than they themselves have been satisfied to enter into or rewrite contracts because they operate harshly or inequitably. It is not enough to say that without the proposed implied covenant, the contract would be improvident or unwise or would operate unjustly. Parties have the right to make such agreements. The law refuses to read into contracts anything by way of implication except upon grounds of obvious necessity. ■ "[I]mplied covenants are not favored in the law; and courts will declare the same to exist only when there is a satisfactory basis in the express contract of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties to the contract made." (*Cousins Inv. Co.* v. *Hastings Clothing Co.*, 45 Cal.App.2d 141 at p. 143 [113 P.2d 878].)

■ The rules controlling the exercise of judicial authority to insert implied covenants require several concurrent conditions: (1) the implication must arise from the language used or it must be indispensable to effectuate the intention of the parties; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on grounds of legal necessity; (4) a promise can be implied only where it may be rightfully

assumed that it would have been made if attention had been called to it; and (5) there can be no implied covenant where the subject is completely covered by the contract. (*Cousins Inv. Co.* v. *Hastings Clothing Co.*, *supra*, at p. 149.) These conditions are required whether the contract involves real or personal property. (*A.B.C. Distrib. Co.* v. *Distillers Distrib. Corp.*, 154 Cal.App.2d 175, 185 [316 P.2d 71].)

Where all of these requirements are met, one of the most commonly implied covenants is that of termination or performance within a reasonable time where the parties have failed to specify time (*San Francisco Brewing Corp.* v. *Bowman*, 52 Cal.2d 607 [343 P.2d 1]; *J. C. Millett Co.* v. *Park & Tilford Distillers Corp.* (D.C.S.D.Cal. 1954) 123 F. Supp. 484). One of the most commonly rejected covenants, regardless of hardship, is the implication that a distributorship agreement is exclusive where not so specified (*A.B.C. Distrib. Co.* v. *Distillers Distrib. Corp.*, *supra*; *Stockton Dry Goods Co.* v. *Girsh*, 36 Cal.2d 677, 679 [227 P.2d 1, 22 A.L.R. 2d 1460]).

Respondent cites *Milton* v. *Hudson Sales Corp.*, 152 Cal. App.2d 418 [313 P.2d 936], and argues that the covenant to repurchase can be justified on the grounds of legal necessity to carry out the intention of the parties. We do not agree. In the *Hudson* case, an automobile dealer, operating under an exclusive franchise, charged that the manufacturer deliberately refused to deliver automobiles in sufficient quantity to meet the dealer's resale needs. The manufacturer relied on the exculpatory clause in the contract. This court interpreted the franchise agreement between the parties to contain an implied promise by the dealer to buy and resell, and a correlative promise by the manufacturer to supply his needs except where, in good faith, it was able to assert a reasonable excuse. The court pointed out (at p. 432) that the dealer was expected to put a sizeable investment into his selling organization and had a compelling obligation to buy cars or have his franchise cancelled. Thus, the manufacturer's implied agreement was legally necessary to prevent the very purpose of the contract from being frustrated (1A Corbin on Contracts, § 155, p. 26).

In the instant case, we do not regard the covenant to repurchase indispensable to effectuate the obvious purposes of the agreement. Gates agreed to appoint respondent as a jobber for various products. Pipe Distributors undertook to

pay for Gates' products as ordered, to establish sufficient sales facilities and to carry an adequate stock of the Gates' products. Gates, in turn, agreed to supply the products at a discounted price. The price lists, size specifications and credit arrangements, all important aspects of the transaction not specifically mentioned in the written agreements, were apparently arranged orally or by supplementary documents. Both parties had the option to cancel the agreement on 30 days' written notice to the other. The exercise of this right by either party could no doubt be substantially detrimental to the other. Although there is no proof in the record that the merchandise could not be sold elsewhere, the possibility of a loss in its disposition was a risk assumed. We can find nothing in the express oral or written agreements entered into that necessitates an implied covenant to repurchase in order to carry out the avowed intentions of the parties or to save the contract from frustration. Nor did the trial court make any finding of bad faith or unfairness on the part of appellant which might justify its reliance on the implied covenant of good faith and fair dealing present in every contractual situation (*Automatic Vending Co.* v. *Wisdom,* 182 Cal.App.2d 354 at p. 358 [6 Cal.Rptr. 31]).

### III   REQUIREMENTS OF CIVIL CODE SECTION 1783, SUBDIVISION (3)

We agree with appellant that even had there been an implied covenant to repurchase, respondent as the seller thereunder nevertheless failed to show compliance with subdivision (3) of Civil Code section 1783.[3]

The statute, referring to a contract of sale, provides: ''Although the property in the goods has not passed, if they cannot readily be resold for a reasonable price, and if the provisions of section 1784, [subd.] (4) are not applicable, the seller may offer to deliver the goods to the buyer, and, if the buyer refuses to receive them, may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer. Thereafter the seller may treat the goods as the buyer's and may maintain an action for the price.''[4]

---

[3] The 1963 repeal (Stats. 1963, ch. 819, § 2) of this and related sections does not become effective until January 1, 1965.

[4] Section 1784, subdivision (4), in actions for damages for nonacceptance of the goods relates to the mitigation of damages and is clearly not applicable here.

The first amended complaint alleged that although requested to do so, Gates had oppressively and maliciously refused either to accept return of the merchandise remaining in Pipe Distributors' hands for credit or to sell merchandise necessary to complete the stock. Appellant's answer denies this allegation.[5]

Thus, under section 1783, subdivision (3), respondent, Pipe Distributors, had the burden of showing as a prerequisite to the maintenance of its action that it tendered the merchandise subject to the alleged repurchase agreement. Although it was stipulated at the pretrial conference that respondent had in its hands $1,570.49 worth of excess inventory, there is nothing in the record to indicate that it at any time offered the merchandise to Gates for repurchase. In December 1961, after the filing of the complaint, Pipe Distributors went into bankruptcy.

Respondent argues that it was excused from making an offer to return the excess inventory since appellant's cancellation of the agreement made it a useless act. The cases relied upon for this contention involved repudiation or anticipatory breaches. In the instant case, we have the cancellation of a contract pursuant to its express terms. The covenant to repurchase, therefore, had one been found, would have required an offer to resell before becoming enforceable.

It is reasonable to conclude that under section 1783, subdivision (3), of the Civil Code, as under section 1440 thereof, the seller must not only establish tender or the waiver thereof but also the ability to perform (*Dickey* v. *Kuhn,* 106 Cal.App. 300 [289 P. 242]). While the record indicates that the premises of Pipe Distributors were padlocked by the trustee in bankruptcy, the status of the merchandise in question was not shown. We are not told whether it was free from encumbrances or whether the respondent was in fact ever able to return it. The stipulation that respondent had merchandise valued at $1,570.49 available for inspection at the time of the pretrial conference does not answer these important questions.

The respondent argues that it held the merchandise as a bailee for Gates. There was, however, a failure of proof in this matter. There is no evidence from which it could

---

[5] Although the answer specifically denies paragraph VI of the second cause of action of the first amended complaint, it is obvious that it refers to paragraph V since there is no paragraph VI.

reasonably be inferred that Pipe Distributors notified Gates that the merchandise in question was held under a bailment. Such notification is a statutory condition precedent to a right to maintain an action for the price of the goods (*B. J. Shelton Co. v. Theo. Muckle Engineering Co.*, 121 Colo. 509 [218 P.2d 1057, 1060], construing subdivision (3) of section 63 of the Uniform Sales Act, which is identical to section 1783, subdivision (3), of the Civil Code). ■■■ The law is well settled that the burden of proof is upon the party claiming the damage to prove that he has suffered damage and to prove the elements thereof with reasonable certainty (*Sapp* v. *Barenfeld*, 34 Cal.2d 515 [212 P. 2d 233]; *Peters* v. *Lines* (9th Cir. 1960) 275 F.2d 919 at p. 930).

The trial court made a commendable effort on an inadequate record to arrive at a practical and equitable solution. However, we must conclude that neither *Milton* v. *Hudson Sales Corp., supra,* nor the other authorities cited by respondent permit the extension of the implied covenant doctrine to the circumstances of this case. We further conclude that even could such a covenant of repurchase be implied, the record fails to show compliance with the requirements of Civil Code section 1783, subdivision (3).

The portion of the judgment appealed from is reversed.

Shoemaker, P. J., and Agee, J., concurred.