[No. A044415. First Dist., Div. Two. June 22, 1989.]

DEAN WITTER REYNOLDS, INC., Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
MANUEL ABASCAL, Real Party in Interest.

## COUNSEL

Tower C. Snow, Jr., Robert T. Sullwold, David S. Rosenbloom, Edward R. Reines and Orrick, Herrington & Sutcliffe for Petitioner.

No appearance for Respondent.

Manuel Glenn Abascal, in pro. per., Kathy Shull Abascal, Stephen Kaus, James M. Wagstaffe and Kaus, Kerr & Wagstaffe for Real Party in Interest.

## OPINION

**PETERSON, J.**—This action was brought by real party Manuel Abascal, on behalf of himself and others similarly situated, to challenge the legality of certain fees charged by petitioner Dean Witter Reynolds, Inc. (Dean Witter) in connection with self-directed individual retirement accounts (IRA's). By this petition in mandamus, Dean Witter seeks to set aside the trial court's order permitting the case to proceed as a class action.

## I. FACTS

Abascal is an attorney and a self-described "specialist in class action litigation involving financial institutions[ ] . . . ." In April 1983 he opened a self-directed IRA at Dean Witter. He chose Dean Witter because he was acquainted with one of its account representatives, and its offices were conveniently near his. He knew that other financial institutions offered such accounts, but he did not investigate the terms on which those services were offered. He did not do so for two reasons: first, because "this is my personal life and I don't give as much attention to it as I do [to] my professional life"; and second, because his experience with financial institutions led him to believe that there was an "oligopolistic market" in which competitors would not present consumers with any difference in terms sufficient to justify the inconvenience and difficulty of comparing alternatives.

About nine days before he actually opened his IRA at Dean Witter, Abascal received a booklet describing the account. The booklet disclosed a "[o]ne-time set up fee" of $20, an "[a]nnual maintenance fee" of $20, and an "[a]ccount termination fee" of $50. Abascal did not recall whether he read the booklet before opening his account. He recalled no oral representations concerning fees, except that there was an annual maintenance fee. He expected to pay that fee and also a "setup fee." He conceded that he would have known about the $50 termination fee if he had read the booklet describing the account.

Abascal liquidated his account in April 1985. Dean Witter deducted a $50 "termination fee" and transmitted the remainder to Abascal. Abascal wrote to Dean Witter in October 1985 asserting that he had been unaware of such a fee, and it was unlawful. He demanded a refund on behalf of himself, his wife (who had also opened an account), and "all others who have been similarly charged." Dean Witter did not honor the demand, and this suit followed.

The first amended complaint charges three alleged unlawful practices of Dean Witter: (1) assessing the $50 "close-out" or "termination" fee upon closing the IRA; (2) assessing the $20 "annual maintenance fee" on January 1 of each year, rather than on the anniversary date of the opening of the account; and (3) failing to rebate a pro rata portion of the annual maintenance fee when the account is closed before the end of the year. Abascal's action is assertedly brought on behalf of persons who established a Dean Witter IRA which was subject to a close-out fee of $50, and all persons who paid such a fee. It pleads seven counts against Dean Witter, two of its employees, and its corporate parent. However, demurrers were sustained as to all counts in favor of all defendants except Dean Witter, and as to four counts (breach of fiduciary duty, conversion, unjust enrichment, and re-

straint of trade in violation of Bus. & Prof. Code, § 16700 et seq.) in favor of Dean Witter. Abascal waived leave to amend the complaint.

Thus the complaint pleaded three remaining counts against Dean Witter. The first cause of action charges that Dean Witter's collection of the close-out fee and its practices concerning the annual fee constitute unfair competition in violation of Business and Professions Code section 17200 et seq. The third cause of action alleges that the close-out fee only is excessive and unconscionable under Civil Code section 1670.5. The fourth cause of action alleges that the close-out fee only is unconscionable and thus violates section 1770, subdivision (s),[1] of the Consumers Legal Remedies Act (CLRA), Civil Code section 1750 et seq.

On Abascal's motion, the trial court ordered that all claims should proceed as a class action. The class was defined as all California residents who were customers of Dean Witter; and all customers of whatever residency who opened IRA's at a California Dean Witter office, who had IRA's with Dean Witter on or after April 24, 1982, which accounts are either still in existence or were terminated or transferred after April 25, 1982 (inferentially, the date four years before the original complaint was filed). Dean Witter initiated this proceeding for an extraordinary writ directing the trial court to set aside that order. We directed Abascal to show cause why a writ should not issue as prayed. We stayed further trial court proceedings pending determination of the petition.

## II. APPELLATE JURISDICTION

An intermediate order concerning class certification is not appealable unless it disposes of the entire action. (*Rosack* v. *Volvo of America Corp.* (1982) 131 Cal.App.3d 741, 749 [182 Cal.Rptr. 800], cert. den. (1983) 460 U.S. 1012 [75 L.Ed.2d 482, 103 S.Ct. 1253].) Such an order is appropriately challenged by mandate before proceedings take place on the merits. (*Blue Chip Stamps* v. *Superior Court* (1976) 18 Cal.3d 381, 387, fn. 4 [134 Cal.Rptr. 393, 556 P.2d 755]; *Danzig* v. *Jack Grynberg & Associates* (1984) 161 Cal.App.3d 1128, 1136 [208 Cal.Rptr. 336], cert. den. (1985) 474 U.S. 819 [88 L.Ed.2d 55, 106 S.Ct. 67].)

## III. CONTENTIONS OF THE PARTIES

Dean Witter contends that the trial court abused its discretion in certifying Abascal's claims for class action treatment. With respect to the first

---

[1] Civil Code section 1770, subdivision (s), provides: "The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: [¶] . . . [¶] (s) Inserting an unconscionable provision in the contract."

cause of action charging unfair business practices alleged to constitute unfair competition, Dean Witter asserts that a class action is unnecessary since all remedies available under the pertinent statutes may be obtained in an action by an individual. The third cause of action claim of unconscionability under Civil Code section 1670.5 is contended to be nonmeritorious and purportedly brought under a statute that provides no right to affirmative relief. The CLRA claim set forth in the fourth cause of action is asserted to be unsuitable for class treatment because Abascal's own claims are without merit. (See Civ. Code, § 1781, subd. (c)(3) [court may consider whether action is without merit].) In this regard Dean Witter contends that Abascal cannot demonstrate the " 'absence of meaningful choice' " requisite to a finding of unconscionability, because there were numerous competing institutions offering IRA's on terms other than those Abascal challenges here, and nothing prevented Abascal from contracting with one of those institutions rather than with Dean Witter. Alternatively, Dean Witter asserts that individual issues concerning unconscionability predominate over common issues. (See Civ. Code, § 1781, subd. (b)(2).)

Abascal contends that Dean Witter is estopped to rely on a supposed lack of substantive merit since Dean Witter has successfully resisted discovery on the merits of the claims. Abascal also challenges Dean Witter's premise that the availability of competing IRA's defeats a claim of unconscionability. Abascal makes no specific response to Dean Witter's arguments concerning the unfair competition claim.

## IV. STANDARD OF REVIEW

■ A plaintiff moving for class action treatment bears the burden of establishing that the requisites for such treatment are present. (*Hamwi* v. *Citinational-Buckeye Inv. Co.* (1977) 72 Cal.App.3d 462, 471 [140 Cal.Rptr. 215]; see also *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 820 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].) In ordinary class actions, this requires the plaintiff to show that there is "an ascertainable class and a well-defined community of interest among the class members." (*B.W.I. Custom Kitchen* v. *Owens-Illinois, Inc.* (1987) 191 Cal.App.3d 1341, 1347 [235 Cal.Rptr. 228], citing *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732].) ■ The trial court has great discretion to determine whether the requisite showing has been made. (*B.W.I. Custom Kitchen* v. *Owens-Illinois, Inc., supra,* 191 Cal.App.3d at p. 1348; *Hamwi* v. *Citinational-Buckeye Inv. Co., supra,* 72 Cal.App.3d at p. 472.) "[R]eviewing courts will not disturb a trial court ruling on class certification which is supported by substantial evidence unless (1) improper criteria were used or (2) erroneous legal assumptions were made." (*B.W.I. Custom Kitchen* v. *Owens-Illinois, Inc., supra,* 191 Cal.App.3d at p. 1348.) "So long as [the trial] court applies proper criteria and its action is founded

on a rational basis, its ruling must be upheld." (*Hamwi* v. *Citinational-Buckeye Inv. Co., supra,* 72 Cal.App.3d at p. 472, citing *Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355, 361 [134 Cal.Rptr. 388, 556 P.2d 750].)

The propriety of class action treatment for claims under the CLRA is determined according to the criteria contained in that act, specifically at Civil Code section 1781.[2] ■ Trial courts retain discretion to determine whether the statutory criteria have been met, but the act "circumscribes the factors which trial courts properly may consider"; and if those factors are found, "a trial court is under a duty to certify the class and is vested with no discretion to deny certification based upon *other* considerations." (*Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 138-139, 140 [142 Cal.Rptr. 325], italics in original.)

## V. SCOPE OF THE ISSUES; PLAINTIFF'S THEORIES

In his motion for class action treatment and before this court, Abascal has characterized his claims more broadly than is warranted by the complaint. As noted above, the first amended complaint does not characterize Dean Witter's practices concerning the annual maintenance fee as unconscionable. Nor does it anywhere refer to subdivision (n) of Civil Code section 1770, making it a violation of the CLRA to "[r]epresent[ ] that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." On the motion for class action certification and before us, Abascal treats the action as though it challenges all three fee practices under Civil Code sections 1670.5 and 1770, subdivision (n).

On the record we have, the only theories which were properly before the trial court or are properly before us are that (1) all three fee practices

---

[2] Civil Code section 1781 provides in pertinent part: "(b) The court shall permit the suit to be maintained on behalf of all members of the represented class if all of the following conditions exist: [¶] (1) It is impracticable to bring all members of the class before the court. [¶] (2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members. [¶] (3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class. [¶] (4) The representative plaintiffs will fairly and adequately protect the interests of the class. [¶] (c) If notice of the time and place of the hearing is served . . ., the court shall hold a hearing, upon motion of any party to the action which is supported by affidavit . . ., to determine if any of the following apply to the action: [¶] (1) A class action pursuant to subdivision (b) is proper. [¶] (2) Published notice pursuant to subdivision (d) is necessary to adjudicate the claims of the class. [¶] (3) The action is without merit or there is no defense to the action."

The first paragraph of subdivision (c) might be construed to require a noticed motion before the trial court may consider the merits of the action. No such motion was made here; Dean Witter's challenge on the merits came in opposition to Abascal's motion for class treatment. No objection is asserted on this ground, however; and we therefore need not address the issue.

constitute unfair competition under Business and Professions Code section 17200 et seq. as alleged in the first cause of action of the complaint; (2) the termination fee is unconscionable under Civil Code section 1670.5 as alleged in the third cause of action; and (3) the termination fee is unconscionable under Civil Code section 1770, subdivision (s), as alleged in the fourth cause of action. In assessing the propriety of the trial court's order granting class action treatment, we will consider only those theories.

## VI. NO AFFIRMATIVE CAUSE OF ACTION CREATED BY SECTION 1670.5

■ Abascal purports to plead his third cause of action for "Unconscionable Prices and Practices" regarding the termination or "close-out" fee grounded on Civil Code section 1670.5. Dean Witter argued below that Civil Code section 1670.5 does not create an affirmative cause of action but merely codifies the *defense* of unconscionability. We agree. The statute empowers the trial court to "refuse to enforce" an unconscionable contract, to "enforce the remainder of the contract without the unconscionable clause," or to "so limit the application of any unconscionable clause as to avoid any unconscionable result." The allegations of Abascal's fourth cause of action claiming the close-out fee is unconscionable under the provisions of CLRA (Civ. Code, §§ 1770, subd. (s), 1780) might on trial trigger the use of Civil Code section 1670.5, subdivision (b), in the conduct of a factual hearing on that unconscionability issue. (See *Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 925-926 [216 Cal.Rptr. 345, 702 P.2d 503], app. dism. (1986) 475 U.S. 1001 [89 L.Ed.2d 290, 106 S.Ct. 1170].) However, regardless of the identity or status of the plaintiff making the claim of unconscionability, the language of Civil Code section 1670.5 does not support the bringing of an affirmative cause of action thereunder for including an unconscionable clause in a contract as does CLRA, the alleged violation of which is the basis of Abascal's fourth cause of action.

## VII. UNCONSCIONABILITY

### A. *Introduction*

■ Dean Witter's main argument is that, to the extent Abascal's claims rest on unconscionability, they lack merit because Abascal could have gone to a competing financial service and opened an IRA free of the offending provisions. Under the CLRA, such lack of merit constitutes grounds for denying class action treatment. (Civ. Code, § 1781, subd.

(c)(3).) We believe this argument has merit, and that it was error to certify the class as to these claims.[3]

In opposition to the motion for class action treatment, Dean Witter offered the declaration of James Dorsey, who described himself as editor and publisher of a newsletter providing "comprehensive coverage of the IRA industry." He declared in effect that he was an expert on IRA products, and that based on this expertise he believed there was "significant competition between financial institutions offering IRA products." Attached to the declaration were annual surveys of self-directed IRA's offered by various institutions for each of six years commencing with 1983. The 1983 survey indicated that 11 of 25 firms charged no termination fee, 10 charged a termination fee of less than $50, and 4 charged a fee of $50.

Although Abascal makes some effort to discredit this evidence, he has not seriously contested the point that competing products were available. Instead he disputes the legal premise that the availability of alternative products in the market precludes a finding of unconscionability and establishes that his claims lack merit. The issue thus joined is whether the availability of alternative products in the market, in circumstances such as these, demonstrates that any claim based on unconscionability lacks merit.

### B. Elements of Unconscionability

The doctrine of unconscionability was thoroughly outlined in *A & M Produce Co.* v. *FMC Corp.* (1982) 135 Cal.App.3d 473, 485-488 [186 Cal.Rptr. 114, 38 A.L.R.4th 1]. The court there noted that the doctrine " 'has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " (*Id.* at p. 486, quoting *Williams* v. *Walker-Thomas Furniture Company* (D.C. Cir. 1965) 350 F.2d 445, 449 [121 App.D.C. 315, 18 A.L.R.3d 1297].) Put another way, the court said, unconscionability presents a "procedural" and a "substantive" aspect. (*A & M Produce Co.* v. *FMC Corp., supra,* 135 Cal.App.3d at p. 486.) The former includes (1) "oppression," which refers to an inequality of bargaining power resulting in no real negotiation and the absence of meaningful choice; and (2) "surprise," which occurs when "the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." (*Ibid.*) Also relevant

---

[3] Abascal contends that Dean Witter should not be heard to argue the merits of the claims since it allegedly resisted discovery on merits-related issues prior to the certification of the class. We are directed to no competent evidence indicating the tenor of discovery attempted or denied, or establishing that Abascal was prevented from exploring the factual basis for Dean Witter's arguments, i.e., the availability of market alternatives. Nor is there any indication that a delay in resolving this issue would permit Abascal to discover any relevant evidence. We discern no basis for an estoppel.

under this heading is the buyer's sophistication, or lack of same. (*Perdue* v. *Crocker National Bank, supra,* 38 Cal.3d at p. 927.)

"Substantive" unconscionability consists of an allocation of risks or costs which is overly harsh or one-sided and is not justified by the circumstances in which the contract was made. (*A & M Produce Co.* v. *FMC Corp., supra,* 135 Cal.App.3d at p. 487.) Presumably both procedural and substantive unconscionability must be present before a contract will be held unenforceable. However, a relatively larger degree of one will compensate for a relatively smaller degree of the other. (*Ibid.*)

 Dean Witter concedes for purposes of argument that some measure of substantive unconscionability might be present, i.e., that the challenged fees might be "too high." The thrust of its argument is that the availability of competing IRA's with alternative fee structures, and the disclosures made to Abascal in the booklet furnished before he opened his account, preclude a finding of either oppression or surprise and thus negate any finding of unconscionability.

### C. *Effect of Alternative Sources*

We believe that any claim of "oppression" may be defeated if the complaining party had reasonably available alternative sources of supply from which to obtain the desired goods or services free of the terms claimed to be unconscionable. If "oppression" refers to the "absence of meaningful choice," then the existence of a "meaningful choice" to do business elsewhere must tend to defeat any claim of oppression.

This was one of several grounds for the holding in *Kurashige* v. *Indian Dunes, Inc.* (1988) 200 Cal.App.3d 606, 614 [246 Cal.Rptr. 310], that an exculpatory clause in a contract for use of a motorcycle park was not unconscionable. In finding an absence of oppression, the court observed, "[T]he record does not show plaintiff had no meaningful choice in deciding to sign the agreement. The meaningfulness of a party's choice is based not only on his relationship to the other party but also on his ability to obtain the goods or services which are the subject of the parties' contract from others. (See *Henningsen* v. *Bloomfield Motors, Inc.* (1960) 32 N.J. 358 [161 A.2d 69, 86-87, 75 A.L.R.2d 1].) There is no evidence plaintiff could not have ridden his motorcycle elsewhere without the constraints imposed upon him by defendants." (*Ibid.*; see also *Premier Wine & Spirits* v. *E. & J. Gallo Winery* (E.D.Cal. 1986) 644 F.Supp. 1431, 1440, affd. (9th Cir. 1988) 846 F.2d 537 [no procedural unconscionability where retailer had other product line choices available].)

Abascal contends that such a rule was "squarely rebuked" in *Parr* v. *Superior Court* (1983) 139 Cal.App.3d 440, 444 [188 Cal.Rptr. 801]. That

case concerned the enforceability of an arbitration clause in a contract for a management account. The account holder argued that the contract was *adhesive* and that the arbitration clause was unenforceable under *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807 [171 Cal.Rptr. 604, 623 P.2d 165]. The brokerage countered by contending that the contract was not adhesive because the account holder "had the option of going to various other brokerage houses to accomplish his ends." (*Parr* v. *Superior Court, supra,* 139 Cal.App.3d at p. 444.) The court adopted the definition of an adhesion contract as " ' "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." ' " (*Ibid.,* quoting *Graham* v. *Scissor-Tail, Inc., supra,* 28 Cal.3d at p. 817, quoting *Neal* v. *State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781].) The court opined: "The adhering party's freedom to choose not to contract at all is irrelevant. The question is whether he is free to negotiate and alter the printed terms of the proffered agreement." (*Parr* v. *Superior Court, supra,* 139 Cal.App.3d at p. 444.) Were the rule otherwise, the court reasoned, "every insurance contract—the paradigm adhesion contract—would necessarily be deemed nonadhesive." (*Ibid.*)

By his reliance on *Parr,* Abascal tacitly equates the notion of an adhesion contract with that of "oppression" in his unconscionability analysis. While we recognize significant overlap between the two concepts, we are not prepared to hold that they are identical. Were we to accept such an equation, *every* form contract not subject to negotiation between the parties would be deemed oppressive, totally disregarding the undisputed ability of a contracting party to choose to obtain that for which he bargained from other sources.

We need not, however, determine the precise interrelation of adhesiveness and oppression. The *Parr* court's discussion of the issue was dictum,[4] since the court proceeded to hold the contract there enforceable in any event. (139 Cal.App.3d at p. 447.) Furthermore, there is ample authority for the proposition that the existence of reasonably available market alternatives defeats a claim of adhesiveness.

One of the earliest discussions of adhesion contracts is found in *Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 882-883, and footnotes 10, 11 [27 Cal.Rptr. 172, 377 P.2d 284]. There Justice Tobriner relied heavily on the leading case of *Henningsen* v. *Bloomfield Motors, Inc., supra,* 161 A.2d 69. As was recognized in *Kurashige* v. *Indian Dunes, Inc., supra,* 200 Cal.App.3d at page 614, the *Henningsen* court acknowledged the relevance of available alternatives to the issue of meaningful choice. (See *Henningsen*

[4]This point was essentially conceded by Abascal at oral argument.

v. *Bloomfield Motors, Inc., supra,* 161 A.2d at pp. 87, 94.) Moreover, Justice Tobriner incorporated this point in his own description of a " 'contract of adhesion' " as one which "must be accepted or rejected by the second party on a 'take it or leave it' basis, without opportunity for bargaining and *under such conditions that the 'adherer' cannot obtain the desired product or service save by acquiescing in the form agreement.* " (*Steven* v. *Fidelity & Casualty Co., supra,* 58 Cal.2d at p. 882, fn. omitted, italics added.) In a footnote he quoted a commentator's generalization that " '[t]he weaker party, in need of the goods or services, is frequently *not in a position to shop around for better terms,* either because the author of the standard contract has a monopoly (natural or artificial) or because all competitors use the same clauses. His contractual intention is but a subjection more or less voluntary to terms dictated by the stronger party, terms whose consequences are often understood only in a vague way, if at all.' " (*Ibid.* fn. 11, quoting Kessler, *Contracts of Adhesion—Some Thoughts about Freedom of Contract* (1943) 43 Colum.L.Rev. 629, 632, italics added.)

Numerous subsequent cases have quoted Justice Tobriner's definition approvingly. (*Smith* v. *Westland Life Ins. Co.* (1975) 15 Cal.3d 111, 122, fn. 12 [123 Cal.Rptr. 649, 539 P.2d 433]; *Hannon Engineering, Inc.* v. *Reim* (1981) 126 Cal.App.3d 415, 426 [179 Cal.Rptr. 78]; *Petherbridge* v. *Prudential Sav. & Loan Assn.* (1978) 79 Cal.App.3d 509, 521 [145 Cal.Rptr. 87]; *Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 356 [133 Cal.Rptr. 775, 84 A.L.R.3d 343]; *Powell* v. *Central Cal. Fed. Sav. & Loan Assn.* (1976) 59 Cal.App.3d 540, 550 [130 Cal.Rptr. 635]; *Lomanto* v. *Bank of America* (1972) 22 Cal.App.3d 663, 668 [99 Cal.Rptr. 442]; *Walnut Creek Pipe Distributors, Inc.* v. *Gates Rubber Co.* (1964) 228 Cal.App.2d 810, 814-815 [39 Cal.Rptr. 767].)

Moreover, several cases have treated the availability of market choice as a determinative factor in the analysis of an assertedly adhesive agreement. The court in *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710-711 [131 Cal.Rptr. 882, 552 P.2d 1178], found that although a contract was presented on a " 'take it or leave it basis,' " it "lack[ed] those oppressive features which have characterized the contracts adjudicated in the prior decisions." (*Id.* at p. 710.) Among other things, the plaintiff was free to choose a different medical plan or make individual arrangements for medical care. (*Id.* at p. 711.) "In many cases of adhesion contracts," the court observed, "the weaker party lacks not only the opportunity to bargain but also any realistic opportunity to look elsewhere for a more favorable contract; he must either adhere to the standardized agreement or forego the needed service." (*Ibid.*) The court distinguished the decision in *Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693], on the ground (among others) that the *Tunkl* plaintiff was " 'in no position to reject the proffered agreement, to bargain

with the hospital, or in lieu of agreement to find another hospital.' " (*Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d at p. 712, quoting *Tunkl* v. *Regents of University of California, supra,* 60 Cal.2d at p. 102.)

A contention that certain promissory notes were adhesive was rejected in *Powell* v. *Central Cal. Fed. Sav. & Loan Assn., supra,* 59 Cal.App.3d 540. The court noted that the defendant lender had not been the only source of loans available to the plaintiffs, that other sources were available, that the plaintiffs were sophisticated borrowers, that the challenged provisions had not been shown to be employed by other lenders, and that the case therefore lacked "the monopoly of supply or the industry-wide usage of similar contract terms and the disparity in bargaining power . . . which characterize contracts of adhesion." (*Id.* at p. 551.)

Similar reasoning was applied in *Walnut Creek Pipe Distributors, Inc.* v. *Gates Rubber Co., supra,* 228 Cal.App.2d 810, where the plaintiff contended that a distributorship contract was adhesive. The court declared that the facts would not support a finding to that effect. "There was no indication that the plastic pipe and other products were available only from [the defendant]. Rather, the record indicates that other similar products were available and that in fact, after the fall of 1959, respondent acquired its plastic pipe from other manufacturers." (*Id.* at p. 815; see also *Petherbridge* v. *Prudential Sav. & Loan Assn., supra,* 79 Cal.App.3d 509, 521-522 [deed of trust not adhesive as to buyers where, among other things, "[t]he area was overbuilt and there were few buyers"].)

We must therefore reject Abascal's contention that the availability of alternative sources is irrelevant to the adhesion analysis. "Procedural" unconscionability includes the element of "oppression," which depends in part on the absence of meaningful choice by a contracting party; and even though a contract may be adhesive, the existence of "meaningful" alternatives available to such contracting party in the form of other sources of supply tends to defeat any claim of unconscionability as to the contract in issue.

 Applied to the case before us, this principle defeats any attempt by Abascal to demonstrate that the $50 termination fee was unconscionable as to him. The record establishes without conflict that other financial institutions offered competing IRA's which lacked the challenged provision. The provision was plainly disclosed in the documentation, and Abascal had every opportunity to discover it. He testified in deposition that he is a "sophisticated investor," meaning someone who can "critically analyze a choice created by [a] transaction," at least "[w]here there is a choice." There is no suggestion that, had he read the documents, he would have misunderstood their significance with respect to the termination fee.

■ We do not hold or suggest (as Abascal erroneously argues in his petition for rehearing) that *any* showing of competition in the marketplace as to the desired goods and services defeats, as a matter of law, *any* claim of unconscionability. Rather we hold that the "oppression" factor of the procedural element of unconscionability may be defeated, if the complaining party has a meaningful choice of reasonably available alternative sources of supply from which to obtain the desired goods and services free of the terms claimed to be unconscionable.

■ On the entire record before us, as above summarized, the termination fee was not shown to be unconscionable as to the sophisticated investor-attorney specializing in class action litigation involving financial institutions, who sought and obtained appointment here as the class representative. He was not shown to lack a` meaningful choice with respect to the termination fee, and hence the "oppression" factor of the procedural element of unconscionability was not established. The agreed-upon terms of the termination fee were not shown to have been hidden from him to such an extent in the Dean Witter documentation as to establish the "surprise" factor of the procedural element of unconscionability. His own challenge to the termination fee thus lacks merit, precluding action by the class he purports to represent in asserting the same challenge. (Civ. Code, § 1781, subd. (c)(3).)

### VIII. UNFAIR COMPETITION

■ Dean Witter contends that Abascal's claims for unfair competition, under Business and Professions Code section 17200 et seq., should not proceed as a class action because class treatment was not shown to be demonstrably superior to an individual action by Abascal under those statutes. We agree.

The suitability of the unfair competition claims for class action treatment must be tested by principles developed under the general class action statute, Code of Civil Procedure section 382.[5] ■ One of these principles is that "the representative plaintiff must show substantial benefit will result both to the litigants and to the court. [Citations.] As pointed out in *City of San Jose* [v. *Superior Court* (1974) 12 Cal.3d 447, 459 (115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223),], 'despite this court's general support of class actions, it has not been unmindful of the accompanying dangers of injustice or of the limited scope within which these suits serve beneficial purposes. Instead, it has consistently admonished trial courts to carefully

---

[5] Code of Civil Procedure section 382 provides in part: "[W]hen the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts. [Citations.] It has also urged that the same procedures facilitating proper class actions be used to prevent class suits where they prove non-beneficial.' [Citation.]" (*Blue Chip Stamps* v. *Superior Court, supra,* 18 Cal.3d at p. 385.)

Rule 23(b)(3) of the Federal Rules of Civil Procedure provides that, for a class action to be maintained, it must be "superior to other available methods for the fair and efficient adjudication of the controversy." This "superiority" criterion has been held to be "manifest" in the *Blue Chip* requirement that the class mechanism confer "substantial benefits." (*Schneider* v. *Vennard* (1986) 183 Cal.App.3d 1340, 1347 [228 Cal.Rptr. 800]; see *Lazar* v. *Hertz Corp.* (1983) 143 Cal.App.3d 128, 143 [191 Cal.Rptr. 849] [federal rule quoted and applied].)

 On the record before us, there is no basis for a finding that the class certification presents a superior method for adjudicating the unfair competition claims. The unfair competition statutes permit suit to be brought by "any board, . . . or *by any person acting for the interests of itself, its members or the general public.* " (Bus. & Prof. Code, § 17204, italics added; see *Committe on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 215 [197 Cal.Rptr. 783, 673 P.2d 660]; *Pines* v. *Tomson* (1984) 160 Cal.App.3d 370, 380 [206 Cal.Rptr. 866]; *Hernandez* v. *Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 71-73 [164 Cal.Rptr. 279].) The court in such a suit is empowered to grant equitable relief, including restitution in favor of absent persons, without certifying a class action. (Bus. & Prof. Code, § 17203; *Fletcher* v. *Security Pacific National Bank* (1979) 23 Cal.3d 442, 453 [153 Cal.Rptr. 28, 591 P.2d 51] [restitution available under similar provisions of Bus. & Prof. Code, § 17535].)

In contrast to the streamlined procedure expressly provided by the Legislature, the management of a class action is "a difficult legal and administrative task." (*Lazar* v. *Hertz Corp., supra,* 143 Cal.App.3d at p. 143.) Its only apparent advantage to victims of an unlawful business practice, vis-à-vis an individual action under the unfair competition statute, is that it may theoretically afford them a better opportunity to protect their interests. (See *Fletcher* v. *Security Pacific National Bank, supra,* 23 Cal.3d at p. 454.) Nothing in the record before the trial court, however, gave substance to this abstract possibility in the context of the present case. Absent persons generally are not bound by a judgment unless they were in privity with a party and the adjudication of their rights comports with due process. (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098].) The possibility that such persons will pursue their own remedies may pose some threat to the *defendant*;

here, however, the defendant opposes class certification and will presumably not be heard to complain later if it suffers adverse consequences as a result.

■■ At our request the parties have briefed issues concerning the availability of civil damages on the first cause of action under Abascal's unfair competition theory. Despite one case holding otherwise (*United Farm Workers of America* v. *Superior Court* (1975) 47 Cal.App.3d 334, 344 [120 Cal.Rptr. 904]), we are satisfied that the better rule denies compensatory damages as distinct from the equitable remedy of restitution. (See *Little Oil Co., Inc.* v. *Atlantic Richfield Co.* (9th Cir. 1988) 852 F.2d 441, 445; *Kates* v. *Crocker Nat. Bank* (9th Cir. 1985) 776 F.2d 1396, 1398; *Meta-Film Associates, Inc.* v. *MCA, Inc.* (C.D.Cal. 1984) 586 F.Supp. 1346, 1363; *Newport Components* v. *NEC Home Electronics* (C.D.Cal. 1987) 671 F.Supp. 1525, 1550-1551; *Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 875 [127 Cal.Rptr. 110, 544 P.2d 1310] [false advertising statutes "do not authorize recovery of damages by private individuals"; private relief "is limited to the filing of actions for an injunction"]; *Committee on Children's Television, Inc.* v. *General Foods Corp., supra,* 35 Cal.3d at p. 215 [acknowledging but not addressing issue].) We believe this interpretation is consistent with the legislative history of congruent 1972 amendments to the false advertising law. Both Senate and Assembly sources indicate that the Legislature was concerned to affirm the "general equity power" of the courts, particularly the power to order restitution. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1763 (1972 Reg. Sess.) May 1, 1972; see Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1763 (1972 Reg. Sess.) undated.) The exclusion of claims for compensatory damages is also consistent with the overarching legislative concern to provide a *streamlined* procedure for the prevention of ongoing or threatened acts of unfair competition. To permit individual claims for compensatory damages to be pursued as part of such a procedure would tend to thwart this objective by requiring the court to deal with a variety of damage issues of a higher order of complexity. This determination is consistent with the Sixth District's recent holding in *Industrial Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1093, 1095-1097 [257 Cal.Rptr. 655].

## IX. CONCLUSION

■■ ■■ We conclude that the trial court abused its discretion by permitting the matter to proceed as a class action. The third cause of action is not available to Abascal under the provisions of Civil Code section 1670.5. As to the contention that the $50 termination fee is unconscionable in the context of either the third or fourth causes of action, Abascal's own claim lacks merit; and class treatment as to the alleged unconscionability of that termination fee under the CLRA or otherwise is therefore unwarranted.

Abascal's claims, that under the provisions of the CLRA both the assessment of the annual maintenance fees and Dean Witter's practices concerning the same are unconscionable, do not warrant class treatment on this record because such claims are nowhere pleaded. On remand the trial court may consider, if appropriate application therefor is made, whether to permit amendment by Abascal of the first amended complaint to plead such unconscionability claims under the CLRA regarding the annual maintenance fees. If such amendment is sought and allowed, the court may further consider whether such claims should proceed as a class action.

As for the claims under Business and Professions Code section 17200 et seq. in the first cause of action, the record before the trial court simply did not establish any advantage to proceeding as a class action. If any new application is made by Abascal for class certification on this unfair competition theory, the court shall weigh the factors identified in *Fletcher, supra,* and the views expressed herein, including the nonavailability of civil damages on such theory, to determine whether class procedures will prove superior to an individual action.[6] In the absence of new evidence bearing on the assessment of those factors, no order authorizing a class action as to the first cause of action can be sustained.

## X. DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order permitting the case to proceed as a class action, to enter a new order denying class certification, and to consider further disposition of this matter in accordance with the views expressed herein. The stay heretofore imposed shall remain in effect pending the finality of this opinion.

Kline, P. J., and Benson, J., concurred.

A petition for a rehearing was denied July 21, 1989, and the opinion was modified to read as printed above. The petition of real party in interest for review by the Supreme Court was denied September 21, 1989.

---

[6] At oral argument, Abascal indicated he may elect not to pursue this case as a class action. He implied he may wish to proceed as a representative individual plaintiff, without class certification, in seeking equitable relief for himself and others on an amended first cause of action under the provisions of Business and Professions Code section 17200 et seq.